CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 12, 2024
LAURA A. AUSTIN, CLERK
BY:
/s/T. Taylor
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN DAVID ANDERSON, III, | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00618 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| HAROLD W. CLARKE, et al., | ) | Senior United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

John David Anderson, III, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against 21 individuals employed by or associated with the Virginia Department of Corrections ("VDOC"). Anderson seeks relief for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. Nineteen defendants (collectively, "Defendants") have filed a motion to dismiss to which Anderson has filed a brief in opposition.[1] ECF Nos. 30, 45. For the reasons set forth below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I.    Background

For at least two years, Anderson has been held in solitary confinement at Red Onion State Prison ("Red Onion"), a supermax facility operated by the VDOC. Anderson alleges that he was initially transferred to Red Onion on September 29, 2021, after receiving three "false disciplinary reports" at Sussex II State Prison ("Sussex II") on September 24, 2021. Compl. ¶ 27, ECF No. 1. As a result of the disciplinary charges and a purportedly "false" Institutional

---

[1] The court has determined that oral argument would not aid the decisional process. Accordingly, Anderson's motion for a hearing on the motion to dismiss, ECF No. 75, is denied.

Classifications Authority ("ICA") report prepared by Defendant Jason Shepherd, Anderson was classified as a Security Level S inmate and placed in solitary confinement at Red Onion. Id. at ¶¶ 30–33. The ICA report indicated that Anderson had assaulted a canine officer and two canines at Sussex II on September 24, 2021, and that Anderson would benefit from being housed in a more secure environment. Compl. Ex. 6, ECF No. 1-1 at 6.

Anderson remained in solitary confinement at Red Onion until December 18, 2022, when he was transferred to Sussex I State Prison and placed in the restrictive housing unit for a "court hold." Compl. ¶ 42. Anderson had been criminally charged with assault on a correctional officer as a result of the incident that allegedly occurred at Sussex II. On March 17, 2023, a jury in the Circuit Court of Sussex County found Anderson not guilty of the criminal charge. Id. at ¶ 43.

Anderson returned to Red Onion on March 27, 2023, and was placed back in solitary confinement. Id. at ¶ 44. Despite notifying various Defendants of his acquittal in the criminal case, Anderson remains in solitary confinement as part of the Step-Down Program at Red Onion. Id. at ¶¶ 45–67. Anderson claims that Defendants have violated his constitutional rights by housing him in solitary confinement and by failing to properly address his complaints, grievances, and/or appeals of his ICA reviews. Id. He seeks to recover compensatory and punitive damages, as well as an additional $120 award for "each day [he] spent wrongfully confined" in solitary confinement at Red Onion. Id. at 36.

Based on the allegations in the complaint, the court construes the pleading, as Defendants do, as asserting the following claims against them:

> **Claims 1 and 4**: Defendants Harold Clarke, David Robinson, Gregory Holloway, Randall Mathena, James Parks, Troy Ford,

George Hinkle, Carl Manis, Rose Durbin, Lisa Hernandez, Rick White, Shannon Fuller, Dwayne Turner, Larry Collins, Roy Sykes, Amee Duncan, Eric Miller, Jane Kegley, and Jason Shepherd violated the Eighth Amendment by subjecting Anderson to the harsh conditions of solitary confinement for a prolonged period.

**Claim 2**: Defendants Clarke, Robinson, Holloway, Mathena, Manis, Hernandez, White, Fuller, Shepherd, and Collins wrongfully subjected Anderson to solitary confinement in retaliation for engaging in activity protected by the First Amendment.

**Claim 3**: Defendants Ford and Tony Darden approved Anderson's transfer to Red Onion on September 29, 2021, as an act of retaliation.

**Claim 5**: Defendants Shepherd, Fuller, Mathena, Robinson, White, Turner, Holloway, Duncan, Collins, Miller, and Kegley deprived Anderson of a protected liberty interest without due process in violation of the Fourteenth Amendment.

**Claim 6**: Defendants Fuller, Robinson, White, Manis, Kegley, Hernandez, and Duncan failed to properly address Anderson's complaints, grievances, and/or grievance appeals, in violation of his right to due process under the Fourteenth Amendment.

**Claim 7**: Defendants Shepherd, Collins, Duncan, Kegley, Hernandez, Holloway, Durbin, and Fuller violated various VDOC Operating Procedures.

**Claim 8**: Defendants Holloway, Collins, Miller, Manis, Robinson, Mathena, White, Hernandez, Darden, Turner, Duncan, and Hinkle failed to investigate Anderson's complaints and grievances.

See Compl. ¶¶ 4–96.[2]

## II.    Standard of Review

Defendants have moved to fully or partially dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. Nevertheless, "[p]rinciples requiring generous construction of pro se complaints

---

[2] Anderson's brief in opposition includes additional allegations against various Defendants that were not included in his complaint. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013); see also Henderson v. City of Roanoke, No. 20-2386, 2020 WL 704351, at *3 (4th Cir. Mar. 9, 2022) (emphasizing that "no litigant is exempt from [this] well-established rule"). Accordingly, the court will not consider any of the additional allegations (or claims) in ruling on Defendants' motion to dismiss. If Anderson wishes to amend his complaint, he may file an appropriate motion under Federal Rule of Civil Procedure 15(a)(2).

are not . . . without limits." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985).

A complaint filed by a <u>pro se</u> plaintiff "still must contain enough facts to state a claim for relief

that is plausible on its face." <u>Thomas v. Salvation Army S. Terr.</u>, 841 F.3d 632, 637 (4th Cir.

2016) (internal quotation marks omitted).

### III.    Discussion

Anderson filed suit against the defendants under 42 U.S.C. § 1983. Section 1983

imposes liability on any person who, under color of state law, deprives another person "of any

rights, privileges, or immunities secured by the Constitution and laws" of the United States.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487

U.S. 42, 48 (1988). Additionally, "to establish § 1983 liability, [a plaintiff] 'must affirmatively

show that the official charged . . . acted personally in the deprivation of [his] rights.'" <u>Riddick</u>

<u>v. Barber</u>, 109 F.4th 639, 650 (4th Cir. 2024) (second alteration in original) (quoting <u>Williamson</u>

<u>v. Stirling</u>, 912 F.3d 154, 171 (4th Cir. 2018)); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 677 ("Because

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution.").

### A.    Claims 1 and 4

In Claims 1 and 4, Anderson alleges that various Defendants violated his Eighth

Amendment right to be free from cruel and unusual punishment by subjecting him to the

harsh conditions of long-term solitary confinement. Anderson alleges that the confinement

conditions include "no human contact," a "limited" number of phone calls and video visits each month, a shower three times per week, and four hours of out-of-cell time per day "in a small kennel cage the size of a double-wide parking space infested with feces, urine and bird droppings." Compl. ¶ 96. All meals are eaten alone in his small cell, and Anderson must be strip-searched and shackled every time he leaves the cell. Id. Anderson alleges that the conditions of confinement have caused him to suffer "emotional, physical and mental injuries that require medication," and that Defendants Clarke, Robinson, Holloway, Mathena, Parks, Ford, Hinkle, Manis, Durbin, Hernandez, White, Fuller, Turner, Collins, Sykes, Duncan, Miller, Kegley, and Shepherd have acted with deliberate indifference to the substantial risk of harm posed by the conditions of confinement. Id. at ¶¶ 89, 93, 94.

"The Eighth Amendment, which prohibits infliction of 'cruel and unusual punishments,' U.S. Const. VIII, applies to claims by prisoners against corrections officials challenging conditions of confinement." Porter v. Clarke, 923 F.3d 348, 355 (4th Cir. 2019). "Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." Id. (internal quotation marks omitted). To satisfy the objective component, a plaintiff must demonstrate that the deprivation alleged was sufficiently serious. Id. "To be sufficiently serious, the deprivation must be extreme—meaning that it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of serious harm resulting from exposure to the challenged conditions." Id. (internal quotation marks and alterations omitted). To satisfy the subjective component, "a plaintiff challenging his conditions of confinement must demonstrate that prison officials acted with deliberate indifference." Id. at 361 (internal

quotation marks omitted.) To prove deliberate indifference, a plaintiff "must show that the official knew of and disregarded an excessive risk to inmate health or safety." Id. (internal quotation marks and alterations omitted). "A plaintiff may satisfy this standard by proving by circumstantial evidence that a risk was so obvious that it had to have been known." Id. (internal quotation marks and alterations omitted). In other words, "an obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." Id. (internal quotation marks and alterations omitted).

"It is well established in both case law and scientific and medical research that prolonged solitary confinement . . . poses a substantial risk of serious psychological and physical harm." Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020); see also Porter v. Clarke, 923 F.3d at 357 ("[S]everal courts have found—based on the empirical evidence set forth above—that solitary confinement poses an objective risk of serious psychological and emotional harm to inmates, and therefore can violate the Eighth Amendment . . . . We agree."). The Fourth Circuit has also recognized that "the extensive scholarly literature describing and quantifying the adverse mental health effects of prolonged solitary confinement that has emerged in recent years provides circumstantial evidence that the risk of harm 'was so obvious that it had to have been known." Porter v. Clarke, 923 F.3d at 361 (quoting Makdessi v. Fields, 789 F.3d 126, 136 (4th Cir. 2015)); see also id. (agreeing with the district court that "it would defy logic to suggest that [corrections professionals] were unaware of the potential harm that the lack of human interaction on death row could cause") (internal quotation marks omitted).

At this stage of the proceedings, Defendants do not challenge the sufficiency of Anderson's allegations with respect to Holloway, White, Fuller, Turner, Collins, Sykes,

Duncan, Miller, Kegley, and Shepherd.[3] See Defs.' Mem. Supp. M. Dismiss 4, ECF No. 31.

They do, however, argue that Anderson has failed to state claim under the Eighth Amendment

against Clarke, Robinson, Mathena, Parks, Ford, Hinkle, Manis, Hernandez, and Durbin. The

court will address each of these Defendants in turn.

### 1.  Harold Clarke

At all times relevant to the complaint, Clarke was the Director of the VDOC. Compl.

¶ 5. In that position, Clarke was responsible for creating policies and procedures for VDOC

staff and inmates, including policies and procedures applicable to the Step-Down Program at

Red Onion, which Anderson describes as "a cover up name for long term solitary

confinement."[4] Id. at ¶¶ 5, 68. Anderson further alleges that Clarke is responsible for "the

extremely harsh conditions of confinement for prisoners in long term solitary confinement"

and that he did "nothing to address . . . these cruel and unusual living conditions," despite the

ongoing litigation in Thorpe v. Va. Dep't of Corr., No. 2:20-cv-00007 (W.D. Va.), a class

action filed by inmates housed in solitary confinement at Red Onion that involves similar

claims under the Eighth and Fourteenth Amendments. Id.; see also Thorpe v. Clarke, 37 F.4th

---

[3] These Defendants have filed an answer as to this claim. See Partial Answer, ECF No. 32.

[4] The Step-Down Program has been discussed in several decisions by the Fourth Circuit in recent years. "The stated purpose of the Step-Down Program is to establish procedures for incentive-based offender management that will create a pathway for prisoners housed in segregation to step-down from Security Level S to lower security levels in a manner that maintains public, staff, and offender safety." Smith v. Collins, 964 F.3d 266, 270 (4th Cir. 2020) (internal quotation marks and alterations omitted).

926, 930–33 (4th Cir. 2022) (summarizing the plaintiff's claims and affirming the denial of a motion to dismiss filed by Clarke and other VDOC officials).[5]

In moving to dismiss the Eighth Amendment claim asserted against Clarke, Defendants primarily argue that Anderson's complaint fails to sufficiently allege Clarke's personal involvement in the claimed Eighth Amendment violation. The court finds this argument unpersuasive.

Although personal involvement is required for an official to be held personally liable under § 1983, such involvement "need not be hands-on." Riddick, 109 F.4th at 649. "Instead, the 'requisite causal connection' between defendant and violation can be established if the defendant 'sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. at 649–50 (alterations omitted) (quoting Amisi v. Brooks, 93 F.4th 659, 670 (4th Cir. 2024)). Accordingly, "[e]ven if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions." Elder v. Gillespie, 54 F.4th 1055, 1065 (8th Cir. 2022) (quoting Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014)); see also Thorpe, 37 F.4th at 947 (concluding that the plaintiffs adequately alleged the defendants' personal involvement by describing each defendant's role in creating or administering the Step-Down Program).

---

[5] In the memorandum filed in support of the pending motion, Defendants acknowledge that Anderson's claims "appear to be similar to and intersect with the claims asserted in [Thorpe]." Defs.' Mem. Supp. M. Dismiss 2 n.2. They also note that the court "may find it appropriate to stay further proceedings on this matter's claims pending the outcome of the Thorpe litigation." Id. However, neither side has specifically requested a stay, and the court declines to consider the matter sua sponte. If either side believes that further proceedings in this case should be stayed pending the resolution of the Thorpe litigation, they may file an appropriate motion.

Here, Anderson alleges that Clarke created the policies applicable to inmates in the Step-Down Program at Red Onion, "including [those establishing] the extremely harsh conditions of confinement for prisoners in long term solitary confinement." Comp. ¶ 5. Anderson further alleges that Clarke did nothing to ameliorate the extremely harsh conditions faced by him and other inmates in solitary confinement, despite being named as a defendant in the Thorpe class action that remains pending in this district. In June 2022, more than a year before this action was filed, the Fourth Circuit held that the plaintiffs in Thorpe had adequately alleged that Clarke and other named defendants "knew the harms long-term solitary confinement causes and disregarded them." Thorpe, 37 F.4th at 930. Moreover, Clarke and the other Thorpe defendants acknowledged on appeal that the Fourth Circuit's 2019 decision in Porter v. Clarke held that "solitary confinement 'creates a substantial risk of psychological and emotional harm' 'sufficient to justify the objective prong'" of an Eighth Amendment claim, id. at 937 (quoting Porter, 923 F.3d at 361), and they "appear[ed] to admit that after Porter, no reasonable officer could ignore the harms solitary confinement causes," id. at 937 n.4.

Upon review of the complaint and applicable law, the court concludes that Anderson has adequately alleged that Clarke's actions or inactions caused him to be subjected to the conditions of confinement at issue. The court also concludes that Anderson has adequately alleged that the risk of harm associated with being placed in solitary confinement for an extended period is serious enough to satisfy the objective component of an Eighth Amendment claim, and that Clarke knew of and disregarded that risk. Consequently,

Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss any Eighth Amendment claim asserted against Clarke.

### 2. Robinson

David Robinson, who is also a named defendant in <u>Thorpe</u>, is the VDOC's Chief of Corrections Operations. Compl. ¶ 6. In that position, Robinson is responsible for "implementing . . . the Step-Down Program/long-term solitary confinement." <u>Id.</u> Additionally, Anderson alleges that Robinson is personally "aware" that he has been "wrongfully confined [for two] years in solitary confinement" because Anderson "wrote him about it." Compl. ¶ 69; <u>see also</u> Compl. Exs. 31–32, ECF No. 1-1 at 23–24. Anderson further alleges that although Robinson's "department" responded to his letter, Robinson "failed to act [to correct] Anderson's housing status," which has caused ongoing "mental [and] emotional harm." Compl. ¶ 69.

In moving to dismiss the Eighth Amendment claim asserted against Robinson, Defendants argue that Anderson's allegations are insufficient to show that Robinson "acted personally in the deprivation of the plaintiff's rights." Defs.' Br. Supp. M. Dismiss 12 (quoting <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985)). Once again, the court disagrees. As noted above, the complaint alleges that Robinson is responsible for implementing the program that purports to provide inmates a pathway out of solitary confinement; that he received notice that Anderson had been wrongfully held in solitary confinement for two years; and that he did nothing to remedy the problem, despite having the power to do so. At this early stage of the proceedings, such allegations plausibly suggest that Robinson was personally involved in the alleged deprivation of Anderson's Eighth Amendment rights. The court further concludes that

Anderson has adequately alleged that his conditions of confinement pose a substantial risk of serious harm and that Robinson knew of and disregarded that risk. Consequently, Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss any Eighth Amendment claim asserted against Robinson.

### 3. Mathena

Randall Mathena, another named defendant in <u>Thorpe</u>, is the VDOC's Security Operations Manager. Compl. ¶ 8. In this position, Mathena is responsible for conducting biannual reviews of each inmate assigned to solitary confinement at Red Onion and for determining whether an inmate should progress out of the Step-Down Program. <u>Id.</u> Anderson alleges that Mathena had "the direct authority to remove [him from solitary confinement] but failed to do so for [two] years," causing him to "drastically" suffer physically, mentally, and emotionally. <u>Id.</u> at ¶ 71.

The court concludes that Anderson has adequately alleged that Mathena was personally involved in keeping him in solitary confinement for an extended period, that his long-term placement in solitary confinement poses a substantial risk of serious harm, and that Mathena knew of and disregarded that risk. Accordingly, Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss any Eighth Amendment claim asserted against Mathena.

### 4. Parks

James Parks is the VDOC's Director of Offender Management. Compl. ¶ 6. Anderson alleges that Parks is responsible for the policies and procedures applicable to security level classifications. <u>Id.</u> ¶ 72. Parks also serves on the External Review Team responsible for conducting biannual reviews of inmates housed in solitary confinement. <u>Id.</u> Anderson further

alleges that he wrote to Parks "seeking relief from being housed in solitary confinement" and that Parks "failed to act to remedy this wrong." Id. at ¶¶ 72, 89.

The concludes that Anderson has adequately alleged that Parks was personally involved in the claimed violation of the Eighth Amendment. The court further concludes that Anderson has plausibly alleged that his long-term placement in solitary confinement poses a substantial risk of serious harm and that Parks knew of and disregarded that risk. Consequently, Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss any Eighth Amendment claim asserted against Parks.

### 5. Ford

Troy Ford is the VDOC's Classification and Records Manager. Compl. ¶ 10. In that position, Ford is allegedly responsible for making the "final decision of approval" with respect to inmates' classification assignments. Id. He is also a member of the External Review Team responsible for conducting biannual reviews of inmates housed in solitary confinement. Id. at ¶ 73. Anderson claims that Ford is personally aware that he is being "housed wrongfully . . . in solitary confinement." Id. at ¶ 73. Although Ford "can reclassify [Anderson] to [an] appropriate level at any time," he has "failed to do so." Id.

The court concludes that Anderson has adequately alleged that Ford was personally involved in keeping him in solitary confinement for an extended period, that his long-term placement in solitary confinement poses a substantial risk of serious harm, and that Ford knew of and disregarded that risk. Accordingly, Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss any Eighth Amendment claim asserted against Ford.

### 6. Hinkle

George Hinkle is the VDOC's Eastern Regional Operations Chief. Compl. ¶ 11. While Anderson alleges that Hinkle approved him being transferred from Sussex II to Red Onion, see id. at ¶ 74, he does not suggest that Hinkle played any role in the decision to place or keep him in solitary confinement for an extended period following the transfer. Accordingly, the complaint does not plausibly allege that Hinkle was personally involved in the deprivation of Anderson's Eighth Amendment rights. Defendants' motion to dismiss will be granted to the extent that it seeks to dismiss any Eighth Amendment claim asserted against Hinkle.

### 7. Manis and Hernandez

Defendants have also moved to dismiss any Eighth Amendment claim asserted against Carl Manis and Lisa Hernandez. Manis was, at all relevant times, the VDOC's Eastern Regional Administrator. Compl. ¶¶ 12, 75. Hernandez was, at all relevant times, the Western Regional Administrator. Id. at ¶¶ 14, 77. In those positions, Manis and Hernandez were responsible for reviewing grievance appeals at Level II of the VDOC's grievance process. Id. at ¶¶ 12, 14.

Anderson filed several grievances complaining about ICA reviews, his security level, and/or his ongoing detention in solitary confinement. In January 2022, Anderson appealed Assistant Warden Shannon Fuller's decision to deny a grievance challenging the ICA's initial recommendation that he be classified as a Security Level S inmate. Compl. Ex. 10, ECF No. 1-1 at 12. Anderson asserted that there was no evidence to support the recommendation and that he had not been given the opportunity to be heard. Id. On February 11, 2022, Manis upheld Fuller's decision, finding "no violation of [VDOC] policy." Compl. Ex. 11, ECF No.

1-1 at 13. In May 2023, Anderson appealed Warden Rick White's decision to deny a grievance alleging that Anderson had been deprived of the opportunity to challenge his security level based on newly discovered evidence. Compl. Ex. 25, ECF No. 1-1 at 27. On May 31, 2023, Hernandez upheld White's decision, finding "no violation of policy." ECF No. 26, ECF No. 1-1 at 28. That same day, Hernandez also upheld White's decision to deny a separate grievance alleging that evidence presented at Anderson's criminal trial proved his innocence and that he should no longer be classified as a Security Level S inmate. Compl. Exs. 31–32, ECF No. 1-1 at 35–36. Hernandez reached similar decisions with respect to grievance appeals filed in June 2023, which asserted that Anderson's security level should have been decreased based on newly discovered evidence and that he should be released from solitary confinement. Compl. Ex. 38–39, 42, ECF No. 1-1 at 42–43, 47–49. Anderson alleges that Hernandez failed to address the fact that he had been wrongfully held in solitary confinement for two years, despite having "the authority to correct this wrongdoing." Compl. ¶ 77.

Having reviewed the complaint, the court concludes that it fails to state a claim against Manis. The complaint indicates that Manis was merely responsible for reviewing a grievance that challenged the initial recommendation to assign Anderson to Security Level S after he was transferred from Sussex II. Anderson does not allege that Manis made any decisions related to his long-term placement in solitary confinement, or that he played any role in administering or implementing the Step-Down Program. Consequently, the complaint fails to plausibly allege that Manis was personally involved in any Eighth Amendment violation stemming from Anderson's extended stay in solitary confinement. Thus, Defendants' motion to dismiss will

be granted to the extent that it seeks to dismiss the Eighth Amendment claim asserted against Manis.

The Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss the Eighth Amendment claim asserted against Hernandez. Unlike Manis, Anderson alleges that Hernandez received several grievance appeals alerting her to the fact that Anderson had been wrongfully held in solitary confinement at Red Onion for an extended period and that the problem remained ongoing. Anderson further alleges that Manis failed to correct this ongoing problem despite having the authority to do so. At this stage of the proceedings, the court concludes that Anderson has adequately alleged that Hernandez was personally involved in the alleged violation of Anderson's rights under the Eighth Amendment. See Latson v. Clarke, 249 F. Supp. 3d 838, 853 (W.D. Va. 2017) ("Notice of continuing harm and failure to exercise one's power to remedy that harm can establish personal involvement in a deprivation of rights for purposes of a § 1983 claim."); see also Annarelli v. Clarke, No. 7:20-cv-00261, 2022 WL 4798345, at *13 (W.D. Va. Sept. 20, 2022), aff'd, No. 22-7135, 2023 WL 5348337 (4th Cir. Aug. 21, 2023) ("When a grievance alleges an ongoing violation of an inmate's right, . . . and the official reviewing the grievance has the power to remedy it, then that official may be liable for a constitutional violation.").

### 8. Durbin

Rose Durbin is the VDOC's Constituent Affairs Liaison. Compl. ¶ 13. As part of her duties, Durbin was responsible for responding to a letter that Anderson sent to Robinson. Id. at ¶ 76. In a letter dated June 5, 2023, Durbin advised Anderson that his designation as a Security Level S inmate had been determined to be appropriate based on the disciplinary

infractions resulting from the incident that occurred at Sussex II. Compl. Ex. 37, ECF No. 1-1 at 41.

The court agrees with Defendants that the complaint fails to state a claim against Durbin. While Anderson's letter complained of being wrongfully held in solitary confinement for an extended period, Anderson does not plausibly allege that Durbin's position within the VDOC charged her with responsibility for any aspect of the Step-Down Program or gave her the authority to remedy the problem described in Anderson's letter. Consequently, Durbin "cannot be held to account for the conditions [Anderson] has described." Adams v. Reagle, 91 F.4th 880, 895 (7th Cir. 2024); see also Williamson, 912 F.3d at 171 (emphasizing that "mere knowledge of [a constitutional] deprivation does not suffice" to establish personal liability under § 1983). Therefore, Defendants' motion to dismiss will be granted to the extent that it seeks to dismiss any Eighth Amendment claim asserted against Durbin.

### B.      Claim 2

As part of Claim 2, Anderson alleges that Defendants Clarke, Robinson, Holloway, Mathena, Manis, Hernandez, White, Fuller, and Collins wrongfully subjected him to solitary confinement in retaliation for filing grievances and lawsuits. To state a retaliation claim under § 1983 against any defendant, a plaintiff must allege facts sufficient to establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (internal quotation marks and alterations omitted). Conclusory or vague accusations of retaliation do not suffice. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en

banc) (rejecting an inmate's "assortment of vague accusations" of retaliation); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (affirming the summary dismissal of a retaliation claim that was based on the conclusory assertion that the denial of protective custody occurred as part of a scheme of retaliation).

Here, Anderson merely asserts in a conclusory fashion that the Defendants identified above "showed acts of retaliation against [him by] keeping [him in] solitary confinement for filing lawsuits [and] grievances." Compl. ¶ 91. He does not allege facts indicating that each named Defendant had knowledge of his lawsuits or grievances. Even if he had, the complaint is devoid of facts from which the court could reasonably infer that any of these Defendants took an adverse action against him that was causally connected to the exercise of his constitutional rights. As other courts have noted, "an inmate cannot immunize himself from adverse action by prison officials merely by filing a grievance or a lawsuit and then claim that everything that happens to him is retaliatory." Maben v. Thelen, 887 F.3d 242, 264 (6th Cir. 2018) (internal quotation marks omitted); see also Owens v. Coleman, 629 F. App'x 163, 167 (3d Cir. 2015) (holding that the mere denial of grievances does not give rise to a viable claim of retaliation). Because the claim of retaliation asserted against Clarke, Robinson, Holloway, Mathena, Manis, Hernandez, White, Fuller, and Collins is based on wholly conclusory allegations, the claim will be dismissed with respect to these Defendants.

## C.    Claim 3

In Claim 3, Anderson asserts a claim of retaliation against Defendants Ford and Darden. He alleges that they approved him being transferred to Red Onion on September 29, 2021, and he describes the action as a "retaliatory transfer." Compl. ¶ 27.

18

As explained above, a claim of retaliation under § 1983 requires (1) engagement in a protected activity; (2) a sufficiently adverse action; and (3) a causal relationship between the protected activity and the adverse action. <u>Martin</u>, 977 F.3d at 299. Anderson does not allege that he engaged in any constitutionally protected activity before being transferred to Red Onion or that Ford and Darden were aware of such activity. Consequently, the complaint fails to state a claim of retaliation against Ford and Darden. The Defendants' motion to dismiss will be granted with respect to Claim 3.

**D.     Claim 5**

In Claim 5, Anderson alleges that Defendants Shepherd, Fuller, Mathena, Robinson, White, Turner, Holloway, Duncan, Collins, Miller, and Kegley violated the Fourteenth Amendment by depriving him of a protected liberty interest without providing due process. At this stage of the proceedings, Defendants do not challenge the sufficiency of Anderson's allegations with respect to Shepherd, Fuller, White, Turner, Holloway, Duncan, Collins, Miller, and Kegley. <u>See</u> Defs.' Br. Supp. Mot. Dismiss 4. They only seek dismissal of this claim with respect to Mathena and Robinson. Although they appear to concede that the conditions of confinement described in the complaint give rise to a protected liberty interest,[6] Defendants argue that Anderson has failed to plead sufficient facts to establish that Mathena and Robinson were personally involved in the alleged due process violations. <u>See</u> Defs.' Br. Supp. M. Dismiss at 23.

---

[6] <u>See</u> <u>Thorpe</u>, 37 F.4th at 943 ("We hold that by 2012, when VDOC instituted Step Down, case law had clearly established that solitary-confinement conditions comparable to those Plaintiffs allege here engendered a protected liberty interest under the Fourteenth Amendment.").

As previously noted, Anderson alleges that Robinson is responsible for "overseeing and implementing" the Step-Down Program at Red Onion and that Mathena is responsible for conducting biannual reviews to determine whether an inmate should progress out of the Step-Down Program. Compl. ¶¶ 4, 8. Anderson further alleges that the periodic reviews afforded to inmates in the Step-Down Program, including those conducted by Mathena, did not provide the level of meaningful review required to comport with due process. See, e.g., id. at ¶ 36 (alleging that the Dual Treatment Team merely "signed off" on the decision to place Anderson on the Step-Down Program's Intensive Management ("IM") pathway without actually reviewing whether the placement was appropriate); id. at ¶ 65 (alleging that "the ICA reviews are sham reviews done in secrecy just to document keeping [Anderson] in solitary confinement"); id. at ¶ 69 (alleging that Step-Down program does not "provide adequate safeguards for prisoners to be classified appropriately in their proper security level"); id. at ¶ 71 (alleging that Mathena failed to meaningfully consider whether solitary confinement remained necessary). At this stage of the proceedings, Anderson's allegations are sufficient to establish that Robinson and Mathena were personally involved in the alleged denial of due process. See Thorpe, 37 F.4th at 947 (rejecting a similar argument). Accordingly, the Defendants' motion to dismiss will be denied to the extent that it seeks to dismiss the due process claim asserted against Robinson and Mathena in Claim 5.

### E.    Claim 6

As part of Claim 6, Anderson alleges that Robinson, Manis, and Hernandez violated his right to due process by finding his complaints and grievances to be unfounded. It is well settled that "inmates have no constitutional entitlement or due process interest in access to a

grievance procedure." <u>Booker v. S.C. Dep't of Corr.</u>, 855 F.3d 533, 541 (4th Cir. 2017). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." <u>Id.</u> Likewise, "[t]he mere denial of a prisoner's grievance" does not rise to the level of a due process violation. <u>Alder v. Corr. Med. Servs.</u>, 73 F. App'x 839, 841 (6th Cir. 2003); <u>see also</u> <u>Geiger v. Jowers</u>, 404 F.3d 371, 373–74 (5th Cir. 2005) ("Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous . . . . [An inmate] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction."); <u>Johnson v. Stone</u>, No. 1:22-cv-00893, 2023 WL 7646510, at *3 (E.D. Va. Nov. 14, 2023) ("[T]he mere denial of an internal complaint or grievance does not support any viable due process claim, as 'inmates have no constitutional entitlement or due process interest in access to a grievance procedure.'") (quoting <u>Booker</u>, 855 F.3d at 541). For these reasons, Claim 6 will be dismissed with respect to Robinson, Manis, and Hernandez.

### F.    Claim 7

In Claim 7, Anderson appears to allege that Shepherd, Collins, Duncan, Kegley, Hernandez, Holloway, Durbin, and Fuller violated various VDOC Operating Procedures. The failure to follow internal policies is "not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation." <u>Jackson v. Sampson</u>, 536 F. App'x 356, 357 (4th Cir. 2013). "Therefore, any failure by prison officials to follow internal correctional policies is insufficient, without more, to support [a § 1983] claim." <u>Id.</u> To the extent that Claim 7 seeks relief for mere violations of VDOC policies and regulations, the claim must be dismissed.

G.     Claim 8

In Claim 8, Anderson alleges that Defendants Holloway, Collins, Miller, Manis, Robinson, Mathena, Holloway, White, Hernandez, Darden, Turner, Duncan, and Hinkle failed to investigate his complaints and grievances. As other courts have recognized a "failure to investigate is not independently cognizable as a standalone claim under Section 1983." Buari v. City of New York, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) (internal quotation marks omitted); see also Geiger, 404 F.3d at 374 (concluding that the alleged failure to investigate an inmate's grievances was not independently actionable under § 1983); Gomez v. Whitney, 757 F.2d 1005, 1006 (9th Cir. 1985) ("We can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."). Because the alleged failure to investigate complaints and grievances is not independently actionable under § 1983, the Defendants' motion to dismiss will be granted with respect to Claim 8.

## V.     Conclusion

For the reasons set forth above, Defendants' partial motion to dismiss, ECF No. 30, is **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: September 12, 2024

Mike Urbanski
Senior U.S.District Judge
2024.09.12 11:22:42
-04'00'

Michael F. Urbanski
Senior United States District Judge